**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: November 3 2015**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 15-30295 |
| | ) | |
| William T. White, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtor's Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1), (2) and (3) [Doc. # 22] and Debtor's response [Doc. #17]. The court held a hearing on the motion that Debtor, his counsel and counsel for the UST attended in person and at which the parties presented testimony and other evidence in support of their respective positions.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(J) and (O).

Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will grant the UST's motion and dismiss Debtor's Chapter 7 case

unless he converts the case to Chapter 13.

## BACKGROUND

Debtor is forty-eight years old and is employed as director of community relations at HCR Manor Care, where he has worked for approximately thirteen years. He is married and has no dependent children.

On February 9, 2015, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code, stating that his debts are primarily consumer debts. Debtor's bankruptcy schedules show no unsecured priority debt and total unsecured nonpriority debt in the amount of $131,937.41 [UST Ex. C, pp. 11-17/50].

Debtor's Schedule I shows gross monthly income of $7,911.04 and monthly income after payroll deductions in the amount of $4,403.25 [*Id.* at pp. 20-21]. Debtor's payroll deductions include $226 as repayment of a 401(k) plan loan and charitable deductions totaling $617.50. [UST Ex. C, p. 21]. Debtor's Schedule J shows total monthly expenses in the amount of $4,919.21. [UST Ex. C, p. 23]. This amount includes expenses paid on behalf of his non-filing spouse in the amount of $244.97 on her student loan debt and $229 on her credit card debt. [*Id.*]. With no adjustments to Debtor's reported income and expenses, Schedules I and J show a monthly budget deficit of approximately $516. [*Id.*].

However, in addition to Debtor's monthly income reported on Schedule I, Debtor received an annual bonus of $13,500 in 2014 and an annual bonus of $12,150 postpetition in 2015. [*See* UST Ex. D., p. 3; UST Ex. N, p. 1]. Although the bonus is discretionary, he has received an annual bonus every year since 2011.

Debtor has also received federal income tax refunds in the amount of $5,447 for tax year 2013 and $3,899 for tax year 2014, entitlement to which was due, in part, to business losses of Debtor's wife in the amounts of $14,867 and $1,930, respectively. [UST Exs. F, H].[1] Debtor's wife is no longer in business and she has earned no income for more than three years. As Debtor's income is stable and his other significant deductions from income on his tax return are likely to continue, including state and local income taxes, real estate taxes, home mortgage interest, and mortgage insurance premiums, the court finds Debtor's 2014 refund more closely represents the refund amount he is likely to continue to receive, less the estimated tax savings resulting from the $1,930 business loss that the court estimates to be approximately $482 ($1,930 x .25).[2] The court finds therefore that Debtor will more likely than not continue to receive tax refunds of

---

[1] Debtor also received state income tax refunds of $1,164 for tax year 2013 and $460 for tax year 2014.[UST Exs. F, H].

[2] According to Debtor's Tax History Report, the highest marginal tax rate applicable to him in the past three years is fifteen percent and in the past five years is twenty-five percent. [*See* UST Ex. H, p. 8].

2

at least $3,000.

Also not reflected in Debtor's Schedule I income is deferred compensation in the amount of $408.16 biweekly, or approximately $871 monthly, that he voluntarily defers in order to participate in his employer's Senior Management Savings Plan ("SMSP"), a non-qualified deferred compensation plan. [*See* UST Ex. D]. Debtor explained that the plan is not technically considered a retirement plan but that, for his purposes, he considers it as such. He further explained that for income tax purposes, his deferred income is not considered received and is not included in his gross income for the taxable year in which it was deferred. *See* 26 U.S. C. § 409A. Debtor's level of participation in the SMSP plan increased from total deferred compensation in 2013 in the amount of $3,194,15 to $10,459.97 in 2014. [*See* UST Exs. E & G]. Debtor's participation has continued in 2015 at the higher level. [*See* UST Ex. D, p. 1 & Ex. N]. Debtor testified that he chooses yearly to participate in the plan, presumably during an open season, after which his choice is irrevocable for the year. His bankruptcy Schedule B shows that his interest in the SMSP plan is valued at $36,900 and his 401(k) plan balance is $28,334. [UST Ex. C, p. 5/50].

Debtor testified that he has chronic medical conditions relating to being born with a club foot and will be undergoing spinal surgery during 2015 that will require him to be off of work for at least six weeks. He testified that he has disability insurance that will pay sixty percent of his gross income during that time. He further testified that he has already met his medical insurance deductible for the year.

According to Debtor's Form B22A means test calculation, he has above median income and no presumption of abuse arises under 11 U.S.C. § 707(b)(2). Although the UST filed a motion to dismiss for abuse under § 707(b)(2) and (b)(3), he is now proceeding only under § 707(b)(3).

## LAW AND ANALYSIS

Where debts are primarily consumer debts, as in this case, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Under § 707(b)(3), in determining whether granting relief would be an abuse, the court is required to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). This provision was added by Congress in 2005 as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In*

3

*re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007). As the movant, the UST carries the overall burden of demonstrating, by a preponderance of the evidence, that Debtor's case should be dismissed. *In re Weixel*, 494 B.R. 895, 901 (B.A.P. 6th Cir. 2013).

In this case, the UST does not argue that Debtor filed his petition in bad faith but instead contends that the totality of his financial circumstances demonstrates that he is not needy and that granting him a discharge would be an abuse of the provisions of Chapter 7. A debtor is "needy" when "his financial predicament warrants the discharge of his debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone may be sufficient to warrant dismissal under some circumstances. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *In re Bender*, 373 B.R. 25, 30 (Bankr. E.D. Mich. 2007); *In re Burge,* 377 B.R. 573, 577 (Bankr. N.D. Ohio 2007); *see Krohn*, 886 F.2d at 126.

In arguing that Debtor has the ability to pay a significant portion of his unsecured debt, the UST asserts that Debtor's deductions from his income for repayment of a 401(k) plan loan and that his voluntary participation in the amount of approximately $871 per month in the SMSP nonqualified deferred income plan should be considered income available to fund a Chapter 13 plan. While the court finds Debtor's repayment of his 401(k) plan loan reasonable given his age, the balance in his account, and the tax consequences of failing to do so, the court nonetheless agrees that his voluntary income deferment of $871 for retirement purposes, which was significantly increased during the year before filing his petition, should be considered income available to fund a Chapter 13 plan. The court estimates such after tax income to be approximately $650 per month ($871 x .75).

In *Behlke*, the Sixth Circuit affirmed the bankruptcy court's decision dismissing a Chapter 7 case as a substantial abuse of the provisions of that chapter, finding that the debtors' voluntary 401(k) contributions in the amount of $460 per month were not necessary for the maintenance and support of the debtors or their dependents and, therefore, should be included as disposable income for purposes of determining their ability to pay their creditors out of future earnings. *Behlke*, 358 F.3d at 435-36. In so finding, the court considered the fact that the debtors had accumulated retirement savings as well as other personal and real property of potentially significant future value. *Id.* at 436. In *In re Tucker*, 389 B.R. 535 (Bankr. N.D. Ohio 2008), this court addressed the precedent established by *Behlke* and concluded that it, as well as the plain language of § 707(b)(3), requires consideration of the totality of the debtor's individual circumstances in determining whether a debtor's 401(k) contributions are reasonably necessary. *See Tucker*, 389 B.R. at 540-41 (citing *In re Beckerman*, 381 B.R. 841, 848-49 (Bankr. E.D. Mich. 2008); *In re Gonzalez*, 378 B.R. 168, 174 (N.D. Ohio 2007)). Factors relevant to this determination include: (1) the debtor's age and time left until retirement; (2) the amount of the debtor's existing retirement savings; (3) level of yearly income; (4) overall budget; (5) amount of monthly contributions; (6) needs of any dependents; and (7) other constraints that make it likely that retirement contributions are reasonably necessary expenses for this particular debtor. *Beckerman*, 381 B.R. at 848 (citing *Hebbring v. U.S. Trustee,* 463 F.3d 902, 907 (9th Cir. 2006), *N.Y. City Emp. Ret. Sys. v. Sapir (In re Taylor),* 243 F.3d 124, 129-30 (2d Cir. 2001)).

In this case, Debtor's income is substantially above the median income for a family size of two in Ohio [$94,932.48 versus $53,551.00; UST Ex. C, p.41/50]. Although his accumulated 401(k) retirement savings and SMSP plan value are modest, his 401(k) balance will grow with continued repayment of his 401(k) plan loan. At forty-eight years of age, interrupting his retirement savings at this time by discontinuing participation in the SMSP plan will not result in an inability to provide for himself in retirement. Rather, Debtor would still have substantial time at the conclusion of a Chapter 13 plan to save for his retirement. And while Debtor has certain chronic medical conditions and will be undergoing surgery, Debtor's testimony regarding the "possibility" of these conditions resulting in his eventual inability to maintain his employment does not persuade the court otherwise. He is currently working and, except for a post-operative period this year, plans to continue to do so. The court is not aware of any other constraint that would make Debtor's retirement savings at this time reasonably necessary. Under these circumstances, the court agrees that his deferment of income could be applied to repay unsecured debt rather than to fund

5

what he treats as his own retirement plan without depriving Debtor of any necessity. *See Behlke*, 358 F.3d at 435 (quoting *In re Jones*, 138 B.R. 536, 539 (Bankr. S.D. Ohio 1991) ("In these circumstances, 'it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend.'")).

The UST also contends that Debtor's monthly expenses should be reduced by eliminating payments on his non-debtor wife's student loan and credit card debts, which payments total approximately $474. The court agrees. Debtor may not prefer his non-filing spouse's unsecured creditors over his own, which, in effect, requires his unsecured creditors to subsidize payment of debt owed to his wife's creditors. *See In re Carpenter*, 318 B.R. 645, 647-48 (Bankr. E.D. Va. 2003) (sustaining objection to confirmation of Chapter 13 plan where debtor effectively proposed to prefer his non-debtor wife's debt to claims of his own unsecured creditors by fully paying his wife's credit card debt outside the plan while paying a thirty percent dividend to his unsecured creditors through the plan).

Debtor has stable employment, having worked for his employer for thirteen years. As an individual with regular, stable income, he is eligible for Chapter 13 should he choose to seek such relief as his debts are less than the statutory eligibility limits. *See* 11 U.S.C. §§ 109(e), 101(30). With no other adjustments, Debtor's monthly income after payroll deductions, as adjusted by eliminating his contribution to the SMSP deferred income plan, is approximately $5,053 ($4,403 + $650 [net amount available by stopping SMSP income deferral]). Debtor's monthly expenses, as adjusted above, total approximately $4,445 ($4,919 - $474 [monthly amount he pays for his wife's debts]), which yields monthly income after expenses of $608.

If Debtor applies only this amount to fund a Chapter 13 plan over the sixty-month maximum plan duration for above-median income debtors, *see* 11 U.S.C. § 1322(d)(1), he would have approximately $33,490 after payment of the Chapter 13 Trustee's administrative expenses to pay on his unsecured debt. Under this scenario, unsecured creditors could receive a dividend of approximately twenty-five percent. *See In re Behlke*, 338 F.3d at 437 (finding *substantial* abuse where debtors had the ability to pay at least a 14% dividend to their unsecured creditors). The court believes that significant additional projected disposable income would also be available to Debtor by way of his receipt of income tax refunds and annual bonuses that would likely result in a much higher dividend being paid to his unsecured creditors.

The availability of debtors' remedies under state law and the relief that might be afforded through private negotiations with creditors are other factors the Sixth Circuit has identified as relevant in deciding

whether it would be an abuse to grant a Chapter 7 discharge in a particular case. Neither party has addressed these factors in this case. As the United States Trustee bears the burden of proof on the motion, *In re Wright*, 364 B.R. 640, 643 (Bankr. N. D. Ohio 2007), the court will assume that there are no such state law remedies or private negotiations that will assist in resolving Debtor's financial problems.

In conclusion, the court finds that Debtor has reasonably stable income and is able to pay a meaningful portion of his unsecured debts out of his future income without Debtor or any dependent being deprived of adequate housing, food, clothing, or other necessities and that granting Debtor relief under Chapter 7 of the Bankruptcy Code would, therefore, be an abuse of the provisions of that chapter given the totality of his financial circumstances.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Debtor is allowed thirty (30) days from the date of this order to file a motion to convert to a Chapter 13 case, absent which the United States Trustee's motion to dismiss [Doc. #22] will be granted, and this case will be dismissed, by separate order of the court.

###